In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-07-635 CV


____________________



TEXAS DEPARTMENT OF CRIMINAL JUSTICE, Appellant



V.



BONNIE YOUNG, Appellee






On Appeal from the 58th District Court


Jefferson County, Texas


Trial Cause No. A-176,511






 MEMORANDUM OPINION


 This is an interlocutory appeal from the denial of a plea to the jurisdiction. See Tex.
Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (Vernon 2008). Bonnie Young sued the Texas
Department of Criminal Justice ("TDCJ") under chapter 21 of the Texas Labor Code,
alleging claims for disparate treatment, hostile work environment, and retaliation. (1) See Tex.
Lab. Code Ann. §§ 21.051, 21.055 (Vernon 2006). TDCJ filed a plea to the jurisdiction
asserting that Young failed to timely file some of her claims within 180 days of the date she
filed her administrative complaint. TDCJ also alleged that Young never asserted a retaliation
claim in her administrative complaint and failed altogether to exhaust that claim.

 The trial court denied TDCJ's plea to the jurisdiction. TDCJ appealed. In three
issues, TDCJ contends the trial court erred in exercising jurisdiction over all of Young's
claims. We affirm in part and reverse and render in part.

Background and Jurisdictional Evidence Before the Trial Court

 In the fall of 2003, TDCJ transferred Young to the Mark W. Stiles Prison Unit as an
assistant warden to work under the direct supervision of Senior Warden David Doughty. In
addition to other duties, Doughty assigned Young to assist in overseeing the prison's kennel
and horse operations. Supervising the kennel included that she supervise the kennel sergeant,
David Conley. Michael Simmons was Conley's assistant kennelman. Young complains that
in March 2005, TDCJ's discriminatory treatment led to her transfer from the Stiles Unit to
another prison.

 Young filed her Charge of Discrimination (the "Charge") on June 7, 2005, with the
Texas Workforce Commission Civil Rights Division. When she filed her Charge, she also
completed an Intake Questionnaire. In these documents, Young alleged that Doughty
removed her from her position as assistant warden at the Stiles Unit based on her gender and
race. She also asserted that Doughty threatened to retaliate against her if she disciplined
Conley, whom Young alleged made unfounded sexist and racist remarks about her with
Doughty's consent. Based on Conley's unfounded allegations, according to Young, Doughty
wrongfully took disciplinary actions against her, ultimately causing her position to be taken
away and resulting in her transfer to a less desirable position at another prison. Young's
charging documents also state that her harassment increased following her refusal to comply
with Doughty's instructions on how to respond to an internal departmental investigation. 

 Young filed suit against TDCJ in February 2006. Young's first amended petition, to
which TDCJ did not specially except, is very general regarding her complaints. We are
required to construe Young's live pleading liberally and look to her intent to determine the
claims the first amended petition asserts. See Tex. Dep't of Parks & Wildlife v. Miranda, 133
S.W.3d 217, 226 (Tex. 2004). 

 Young's first amended petition, liberally construed, alleges a gender and race-based
retaliation claim and a gender and race-based hostile work environment claim. Specifically,
Young's first amended petition complains that TDCJ wrongfully (1) removed her supervisory
duties over the prison's kennel and horse operations, (2) placed her on probation, and (3)
transferred her from the Stiles Unit to the LeBlanc Unit. Based on these acts, Young also
asserted three discrete gender-based and three discrete race-based disparate treatment claims.

 Both parties submitted evidence to support their arguments over whether the trial
court had jurisdiction of Young's claims. Young's opposition to TDCJ's plea provides
further details about the acts allegedly taken against her based on her gender and race, which
Young described as a "continual scheme" by TDCJ to discriminate against her.

 According to Young, soon after she began supervising Conley, he began making
threatening remarks about Young to Simmons, which Simmons reported. Despite Doughty's
instruction that she not discipline Conley, Young issued Conley several reprimands based on
his poor work performance and TDCJ policy infractions. Doughty subsequently dismissed
many of her allegations against Conley. Then, in November of 2004, Conley filed a
discrimination complaint against Young. Conley alleged that Young allowed another
correctional officer to make racist remarks in his and Young's presence. Conley also alleged
that Simmons and Young were engaged in a sexual relationship. An investigation failed to
substantiate Conley's complaints.

 Doughty met with Young and Simmons and told them that he did not allow such
relationships. Doughty subsequently modified Young's job duties so that she no longer had
supervisory responsibilities over the prison's kennel or field operations. Young responded
by writing Doughty, complaining about Conley's spreading of false information about her
relationship with Simmons and objecting to the modifications that Doughty made to her job. 


 As further evidence of discrimination, Young points to Doughty's recommendation
that she be charged with damaging TDCJ's property. Following an investigation, TDCJ
placed Young on probation on March 10, 2005. After Young filed a grievance, these
disciplinary actions were overturned. Nevertheless, Young asserts she was damaged because
TDCJ restricts employees from receiving promotions during probationary periods.

 The jurisdictional evidence also reflects that TDCJ notified Young in March 2005,
of her transfer to the LeBlanc Unit, a minimum-offender, substance abuse facility. Young
asserts that the transfer was undesirable because it deprived her of the opportunity to gain
experience at the Stiles Unit, a large maximum security prison. Young also claims that due
to her transfer, she could no longer work at her second job, teaching at Lamar Institute of
Technology. In another grievance filed by Young, she requested that she be reassigned to
the Stiles Unit. TDCJ denied this grievance on August 17, 2005.

Standard of Review

 A claimant in an unlawful employment practice claim is required to exhaust the
administrative remedies prescribed by the Texas Labor Code. See Specialty Retailers, Inc.
v. DeMoranville, 933 S.W.2d 490, 492 (Tex. 1996) (per curiam); see also Tex. Lab. Code
Ann. §§ 21.201, 21.202 (Vernon 2006). Failure to do so deprives a court of subject matter
jurisdiction. See DeMoranville, 933 S.W.2d at 492. Employers, including governmental
entities, use pleas to the jurisdiction to contest the trial court's subject matter jurisdiction over
the cause of action. See Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000). 
Whether a trial court has subject matter jurisdiction is a question of law reviewed de novo. 
Tex. Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004); Tex. Natural
Res. Conservation Comm'n v. IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002). 

 The plaintiff carries the burden to allege facts that affirmatively demonstrate the trial
court's subject matter jurisdiction over the claims. Tex. Ass'n of Bus. v. Tex. Air Control Bd.,
852 S.W.2d 440, 446 (Tex. 1993). In determining whether a court has subject matter
jurisdiction, the facts pled in the plaintiff's petition are taken as being true; nevertheless, the
court is not required to look solely to the pleadings, but may also consider evidence and must
do so when necessary to resolve the jurisdictional issues raised. Bland, 34 S.W.3d at 555;
Tex. Air Control Bd., 852 S.W.2d at 446; see also County of Cameron v. Brown, 80 S.W.3d
549, 555 (Tex. 2002). If the evidence creates a fact question regarding the jurisdictional
issue, the trial court must deny the plea to the jurisdiction. Miranda, 133 S.W.3d at 227-28. 
Conversely, if the jurisdictional evidence is undisputed or it fails to raise a fact question, the
trial court should rule on the plea to the jurisdiction as a matter of law. Id. at 228.

Analysis 

 A. Was Young's Hostile Work Environment Claim Preserved by a Timely
Administrative Complaint? 


 In issue one, TDCJ contends that Young failed to present any evidence of "racially
or sexually harassing conduct occurring within 180 days of [Young's] filing her Charge." As
a result, TDCJ argues the trial court had no jurisdiction over Young's hostile work claim. 

 The Texas Labor Code makes it unlawful for an employer to discriminate against an
employee with respect to compensation or the terms, conditions, or privileges of employment
because of race, color, disability, religion, sex, national origin, or age. Tex. Lab. Code Ann.
§ 21.051. The complaint about an unlawful employment practice must be filed "not later
than the 180th day after the date the alleged unlawful employment practice occurred." Id.
§ 21.202. The timely filing of a complaint is "mandatory and jurisdictional." DeMoranville,
933 S.W.2d at 492; Schroeder v. Tex. Iron Works, Inc., 813 S.W.2d 483, 486 (Tex. 1991). 
 Generally, failure to timely file an administrative complaint known as the "charge"
results in the dismissal of the suit for lack of jurisdiction. See Schroeder, 813 S.W.2d at 488. 
However, if the claimant states a claim for a hostile work environment, the claim will be
timely so long as one act falls within the appropriate time period and all of the acts that make
up the hostile work environment claim are part of the same unlawful employment practice. 
Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 120-22, 122 S.Ct. 2061, 153 L.Ed.2d
106 (2002) ("A court's task is to determine whether the acts about which an employee
complains are part of the same actionable hostile work environment practice, and if so,
whether any act falls within the statutory time period."). (2) "A hostile work environment claim
is comprised of a series of separate acts that collectively constitute one unlawful employment
practice." Id. at 117 (internal citation omitted). "It occurs over a series of days or perhaps
years and, in direct contrast to discrete acts, a single act of harassment may not be actionable
on its own." Id. at 115. A hostile work environment claim is based on the cumulative affect
of individual acts. See id. 

 TDCJ maintains that the last action that could potentially support Young's hostile
work environment claim was Conley's November 19, 2004, remarks regarding Young's
sexual relationship with Simmons. As these remarks occurred more than 180 days before
Young filed her Charge, TDCJ contends that Young's hostile work environment claim is
barred. TDCJ bases its conclusion on the assumption that Young's complaints about other
discrete acts that occurred within the 180-day filing period are not sufficient to support her
hostile work environment claim. TDCJ also asserts that Young cannot include any separately
actionable discrete act as a part of a hostile work environment claim. Alternatively, TDCJ
maintains that even if the acts that occurred within 180 days of the date she filed her Charge
could be considered, "those events are not inherently racial or sexual in character or
purposes."

 If separately actionable discrete acts can form a part of a hostile work environment
claim, and assuming those discrete acts involve sexual or racial discrimination, Young's
hostile work environment claim would be timely. Therefore, we first evaluate TDCJ's
argument that Young's hostile work environment claim cannot be premised, in part, on a
discrete act that is actionable alone. TDCJ relies on the United States Supreme Court's
language in Morgan as authority for its contention that discrete acts within the 180-day time
period cannot be used as a part of Young's hostile work environment claim. In Morgan, the
Supreme Court held that "discrete discriminatory acts are not actionable if time barred, even
when they are related to acts alleged in timely filed charges." Id. at 113. Thus, under
Morgan, a complainant cannot rely on a hostile work environment claim to salvage an
otherwise time-barred discrete discrimination claim actionable on its own. See id. 

 In this case, Young does not attempt to use an otherwise valid hostile work
environment claim to revive separate causes of actions for time-bared discrete acts. Morgan,
which concerned reviving time-barred discrete discrimination claims, does not stand for the
proposition that a hostile work environment claim cannot be based, in part, on a pattern of
conduct that includes discrete acts separately actionable. See id. In contrast to Morgan,
Young relies on discrete acts occurring within the 180-day limitation period to serve as some
of the acts that allegedly created her hostile work environment. We conclude that Morgan
is distinguishable.

 Young's Charge alleges two specific discrete acts that occurred within the 180-day
limitation period: specifically, Young's Charge asserts that her unwarranted probation and
that her transfer from the Stiles Unit were components of TDCJ's discriminatory actions
based on her gender and race. In addition to these discrete acts, Young's Charge also alleges
multiple instances of discrimination that include TDCJ's failure to properly respond to
Conley's allegations about her relationship with Simmons and other TDCJ's disciplinary
actions that did not result in her probation. 

 With respect to hostile work environment claims, Morgan explicitly states that the
single acts alone may not be actionable; it does not exclude single acts from serving as part
of the pattern of an "unlawful employment action." Id. at 115. Young asserted a pattern of
discrimination and contends that all of the complained of actions created her hostile work
environment. Two specific employment decisions, TDCJ's placement of Young on
probation and its reassignment of Young to the LeBlanc Unit, occurred inside the 180-day
period prior to Young's filing her Charge. Consequently, Young's hostile work environment
claim, as liberally interpreted, was administratively timely exhausted prior to her filing suit. 

 TDCJ also contends that its placement of Young on probation and transfer of Young
to the LeBlanc Unit were not inherently discriminatory. However, Young pled that these
decisions were based on her gender and race, and in support of its plea to the jurisdiction,
TDCJ did not submit evidence from the TDCJ employees who made these decisions. Thus,
when the trial court decided TDCJ's plea, a fact issue remained regarding whether these
decisions were discriminatory.

 We conclude that the trial court has jurisdiction over Young's hostile work
environment claim. Morgan, 536 U.S. 101, 120-22; Tex. Ass'n of Bus., 852 S.W.2d at 443. 
We overrule TDCJ's first issue.

 B. Are Young's Claims for Discrete Acts Occurring More than 180 Days Before
She Filed Her Administrative Complaint Time Barred?


 In addition to asserting claims for a hostile work environment based on a series of
decisions, Young's first amended petition, when liberally interpreted, also asserts discrete
disparate treatment claims based on Young's gender and race. Some of the alleged discrete
acts occurred outside the 180-day statutory period. Because the trial court's order would not
prohibit Young from proceeding to trial on her discrete race and gender discrimination claims
falling outside the 180-day limitations period, we address TDCJ's second issue. See Tex.
R. Civ. P. 48. 

 In its second issue, TDCJ argues that Young failed to exhaust her administrative
remedies based on discrete discriminatory acts occurring more than 180 days before she filed
her Charge. Young concedes that discrete discriminatory acts falling outside the 180-day
limitations period are time-barred. 

 Generally, compliance with administrative prerequisites on an employment
discrimination claim is mandatory and jurisdictional. DeMoranville, 933 S.W.2d at 492. 
With respect to discrete employment decisions that gives rise to discrimination claims, the
Texas Labor Code required Young to file her Charge within 180 days of the alleged
discriminatory employment practice. See Tex. Lab. Code Ann. §§ 21.201, 21.202. The
180-day limitations period commences the date the alleged unlawful employment practice
occurred. See id. § 21.202; DeMoranville, 933 S.W.2d at 492-93. A discrete discriminatory
act or disparate treatment discriminatory practice "occurs" the day it happens. Morgan, 536
U.S. at 110.

 Young filed her Charge on June 7, 2005. The trial court, by denying TDCJ's plea,
implicitly allowed Young to proceed on all claims based on prohibited discrete employment
decisions, including those that fell outside the 180-day filing period. We conclude the trial
court erred in allowing Young to proceed on claims wholly based on discrete discriminatory
acts that occurred prior to December 9, 2004. See Tex. Gov't Code Ann. § 311.014(a)
(Vernon 2005) (180 days from June 7, 2005). Therefore, with respect to those claims, we
hold the trial court is without subject matter jurisdiction to hear them. Accordingly, we
reverse and render judgment dismissing any of Young's claims wholly premised on discrete
acts that occurred prior to December 9, 2004. (3) We overrule TDCJ's issue two in part and
sustain it in part. 

 C. Is Young's Retaliation Claim Factually Related to Her Timely Filed
Discrimination Claims?


 In its third issue, TDCJ contends that it is immune from Young's retaliation claim
because it was not asserted in her Charge. Young responds that her retaliation claim is not
jurisdictionally barred because it is reasonably related to her Charge.

 Under the Texas Labor Code, it is unlawful for an employer to retaliate "against a
person who . . . (1) opposes a discriminatory practice; (2) makes or files a charge; (3) files
a complaint; or (4) testifies, assists, or participates in any manner in an investigation,
proceeding, or hearing." Tex. Lab. Code Ann. § 21.055. Suits based on section 21.055 are
limited to claims made in the discrimination complaint and "factually related claims that
could reasonably be expected to grow out of the Commission's investigation of the charge."
Thomas v. Clayton Williams Energy, Inc., 2 S.W.3d 734, 738 (Tex. App.-Houston [14th
Dist.] 1999, no pet.) (citing Fine v. GAF Chem. Corp., 995 F.2d 576, 578 (5th Cir. 1993)). 
"The purpose of expanding the right to raise claims beyond the specific complaints made in
the discrimination complaint is to protect lay persons who make the discrimination complaint
without legal training or assistance." Bexar County v. Gant, 70 S.W.3d 289, 292 (Tex.
App.-San Antonio 2002, pet. denied) (citing Fine, 995 F.2d at 577).

 With respect to plaintiffs who have valid discrimination cases pending before a trial
court, courts have not required plaintiffs to exhaust their administrative remedies as to their
retaliation claims before allowing those claims to proceed when the retaliation claims grow
out of the claims in the administrative complaints. For example, in Thomas, the plaintiff
filed a charge alleging solely a complaint of race discrimination. Thomas, 2 S.W.3d at 738. 
Thomas then filed suit; he restated his race discrimination allegations and also asserted a
retaliation claim. Id. The appeals court concluded that because "Thomas's retaliation claim
arose due to his filing a complaint . . . it was not necessary for Thomas to file a second
complaint" that separately alleged retaliation. Id. Other courts have agreed that district
courts have ancillary jurisdiction to hear retaliation claims that grow out of a timely filed
administrative charge. See Elgaghil v. Tarrant County Junior Coll., 45 S.W.3d 133, 142
(Tex. App.-Fort Worth 2000, pet. denied); see also San Antonio Water Sys. v. Odem, No. 04-07-00130-CV, 2007 Tex. App. LEXIS 6682 (Tex. App.-San Antonio, Aug. 22, 2007, no
pet.) (mem. op.); City of La Joya v. Ortiz, No. 13-06-401-CV, 2007 Tex. App. LEXIS 818
(Tex. App.-Corpus Christi, Feb. 1, 2007, no pet.) (mem. op.).

 TDCJ relies on Gant to support its position that Young's retaliation claim does not
grow out of the allegations contained in her Charge. See 70 S.W.3d 289. Gant, however,
is factually distinguishable. Gant's lawsuit contained retaliatory complaints that were not
factually related to the complaints in his charge; as a result, the San Antonio Court of
Appeals held that the retaliation claim asserted in his lawsuit was not one that "'could
reasonably be expected to grow out of' an investigation of Gant's race discrimination
complaint." Id. at 293 (quoting Thomas, 2 S.W.3d at 738). The court specifically noted that
Gant did not complain that retaliatory action was taken against him because he filed his
charge. Id. at 293 n.1. 

 Unlike the facts involved in Gant, Young's Charge includes complaints regarding
Doughty's retaliation against her for not adhering to Doughty's instructions that she not
discipline Conley. Recently, the Texas Supreme Court clarified that "actionable retaliation
exists when an employer makes an adverse employment decision against an employee who
voices opposition to conduct made unlawful under the [Labor Code], regardless of whether
the employee has already filed a formal complaint[.]" City of Waco v. Lopez, 51 Tex. Sup.
Ct. J. 1129, 2008 Tex. LEXIS 652, at *8 (Tex. Jul. 11, 2008). The Court stated that internal
grievances alleging prohibited conduct "reasonably equates to opposition to discriminatory
conduct 'under' the [Labor Code.]" Id. at *7.

 We conclude that the issues raised in Young's Charge reasonably equate to the
opposition to discriminatory conduct. More details regarding Young's retaliation claim are
found in her supplemental opposition to TDCJ's plea to the jurisdiction. As we construe
Young's Charge, she complained that she was transferred from the Stiles Unit because she
opposed Doughty's alleged practice of giving preferential treatment to Conley.

 Therefore, Young's retaliation claim is a "factually related claim[] that could
reasonably be expected to grow out of" an investigation of Young's race and gender
discrimination complaints. Thomas, 2 S.W.3d at 738. We hold that the trial court has
ancillary jurisdiction over Young's retaliation claim and that Young was not required to file
a separate charge for retaliation. See Elgaghil, 45 S.W.3d at 142; Thomas, 2 S.W.3d at 738. 
Accordingly, we overrule TDCJ's third issue.

Conclusion

 We affirm the trial court's order denying TDCJ's plea to the jurisdiction with respect
to Young's retaliation claim and hostile work environment claim. Regarding Young's
disparate treatment claims based on her gender and race, we affirm the trial court's denial of
TDCJ's plea to the jurisdiction for claims based on acts occurring on or after December 9,
2004. For any discrete disparate treatment claims that occurred prior to December 9, 2004,
we reverse the trial court's order and render judgment dismissing those claims.


 AFFIRMED IN PART AND REVERSED AND RENDERED IN PART.

 


 ______________________________

 HOLLIS HORTON

 Justice




Submitted on May 15, 2008

Opinion Delivered October 2, 2008

Before McKeithen, C.J., Gaultney and Horton, JJ.
1. In a joint petition, both Bonnie Young and Michael E. Simmons sued the Texas
Department of Criminal Justice; however, Michael E. Simmons is not a party to this
interlocutory appeal.
2. When reviewing a case brought under the Texas Labor Code, a court may look to
analogous federal provisions in Title VII and federal precedent relating to the same. See
Coastal Mart, Inc. v. Hernandez, 76 S.W.3d 691, 695 (Tex. App.-Corpus Christi 2002, pet.
dism'd); Elgaghil v. Tarrant County Junior Coll., 45 S.W.3d 133, 139 (Tex. App.-Fort
Worth 2000, pet. denied); see also Tex. Lab. Code Ann. § 21.001(1) (Vernon 2006). 
3. With respect to TDCJ's decisions about Young's employment that occurred 180 days
prior to Young's filing of her Charge, we need not address whether the evidence sufficiently
demonstrated that those decisions effected the "terms, conditions, or privileges" of her
employment. Tex. Lab. Code Ann. § 21.051 (Vernon 2006); see also Tex. R. App. P. 47.1.